UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

| | |
|---|---|
| GRANITE STATE INSURANCE COMPANY,<br><br>  Plaintiff,<br><br>v.<br><br>PROBUILD HOLDINGS, INC.;<br>PROBUILD EAST, LLC; DREW ROSEN;<br>and DOE DEFENDANTS 1-10,<br><br>  Defendants. | Case No.<br><br>**10-CV-60246-Martinez-Brown**<br><br>FILED by __VT__ D.C.<br>ELECTRONIC<br><br>**Feb. 19, 2010**<br><br>STEVEN M. LARIMORE<br>CLERK U.S. DIST. CT.<br>S.D. OF FLA. - MIAMI |

## COMPLAINT FOR DECLARATORY JUDGMENT

Plaintiff, GRANITE STATE INSURANCE COMPANY, files this Complaint for Declaratory Judgment against Defendants, PROBUILD HOLDINGS, INC.; PROBUILD EAST, LLC; DREW ROSEN; and DOE DEFENDANTS 1-10, and alleges as follows:

### INTRODUCTION

1. Plaintiff Granite State Insurance Company seeks a declaration under 28 U.S.C. §§ 2201-2202 that it owes no duty to defend or indemnify ProBuild Holdings, Inc., ProBuild East LLC (sometimes referred to collectively as the "ProBuild Defendants"), Drew Rosen or Doe Defendants 1-10 (sometimes referred to collectively as the "Shareholder Defendants") (collectively referred to herein as "Defendants") under Granite State policy number 02-LX-008998075-0/000 (the "Policy") issued to Rosen Building Supplies, Inc. dba Rosen Materials and On Site Materials ("Rosen"), effective from February 16, 2006 to February 16, 2007, with respect to claims related to allegedly defective drywall supplied by Rosen and/or Defendants.

2. The ProBuild Defendants assert that they are entitled to coverage, including defense and indemnification, under the Policy as successors to Rosen Building Supplies, Inc., which

merged with a subsidiary of ProBuild Holdings, Inc., The Contractor Yard ("TCY"), in 2007 and was subsequently renamed ProBuild East, LLC.

3. Upon information and belief, the Shareholder Defendants assert that they are entitled to coverage under the Policy as former shareholders of Rosen Building Supplies, Inc. and parties to the merger agreement wherein they agreed to indemnify ProBuild Holdings, Inc. and TCY, now known as ProBuild East LLC, for liabilities arising out of Rosen's operations.

4. There is an actual, present and bona fide controversy between the parties with respect to Granite State's coverage obligations to defend and indemnify Defendants in claims involving allegedly defective drywall.

## THE PARTIES

5. Granite State Insurance Company is an insurance company organized and existing under the laws of the State of Pennsylvania, with its principal place of business in New York.

6. Defendant ProBuild Holdings, Inc. is a corporation organized and existing under the laws of the State of Delaware, with its principal place of business in Denver, Colorado. ProBuild Holdings, Inc. is in the business of purchasing, selling, and/or distributing drywall throughout Florida, including but not limited to St. Lucie County, Palm Beach County, and Miami-Dade County.

7. Defendant ProBuild East, LLC is a limited liability company organized and existing under the laws of the State of Delaware, with its principal place of business in Denver, Colorado. ProBuild East, LLC is in the business of purchasing, selling, and/or distributing drywall throughout Florida, including but not limited to St. Lucie County, Palm Beach County, and Miami-Dade County.

8. Upon information and belief, Defendant Drew Rosen is a resident of Florida, and was

a shareholder of Rosen Building Supplies, Inc. Upon information and belief, Defendant Drew Rosen was a party to the merger agreement between Rosen and TCY wherein he agreed as a Rosen shareholder to indemnify and hold harmless ProBuild Holdings, Inc. and TCY, now known as ProBuild East LLC, for liabilities arising out of Rosen's operations.

9. Upon information and belief, Doe Defendants 1-10 were shareholders of Rosen Building Supplies, Inc. Upon information and belief, Doe Defendants 1-10 were parties to the merger agreement between Rosen and TCY wherein they agreed as Rosen shareholders to indemnify and hold harmless ProBuild Holdings, Inc. and TCY, now known as ProBuild East LLC, for liabilities arising out of Rosen's operations.

## JURISDICTION AND VENUE

10. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 2201 and 1332, as amended. This matter involves a dispute between citizens of different states and the value in controversy exceeds $75,000, exclusive of interest and costs.

11. Venue is proper in this Court pursuant to 28 U.S.C. § 1391 (a) and (c) because one or more of the defendants resides and conducts business in this district, and a substantial part of the events giving rise to this claim occurred in this district.

12. Granite State is entitled to declaratory relief under 28 U.S.C. § 2201.

## GENERAL ALLEGATIONS

### Background

13. Effective December 17, 2007, TCY and Rosen entered into a merger agreement with TCY, a subsidiary of Defendant ProBuild Holdings, Inc., pursuant to which TCY was the survivor company. Effective March 31, 2008, TCY changed its name to "ProBuild East LLC."

14. Before the merger, Rosen was incorporated under the laws of the State of Florida and

headquartered in Broward County, Florida. Rosen was in the business of selling drywall and building products throughout the State of Florida.

15. Before the merger, Granite State issued policy number 02-LX-008998075-0/000 (the "Policy") to Rosen Building Supplies, Inc. dba Rosen Materials and On Site Materials ("Rosen"), effective from February 16, 2006 to February 16, 2007 (**attached hereto as Exhibit A**). The Policy was procured through the Virtual MGU Insurance Agency located in Massachusetts and issued to Rosen at a Florida address.

16. The ProBuild Defendants assert that they are entitled to coverage, including defense and indemnification, under the Policy as successors to Rosen's rights, if any, under the Policy.

17. Upon information and belief, the Shareholder Defendants assert that they are entitled to coverage under the Policy for their liability, if any, to indemnify the ProBuild Defendants.

## The Defective Drywall Claims

18. In 2009, the ProBuild Defendants were named in approximately eleven lawsuits related to defective drywall, and Rosen was named in one lawsuit related to defective drywall (collectively referred to herein as the "Underlying Lawsuits").

19. The complaints in the Underlying Lawsuits attached hereto as **Exhibit B** were brought by homeowners who allege that ProBuild East, LLC supplied drywall used to build the their homes, which is defective in that it "emits various sulfide gases and/or other chemicals through 'off-gassing' which causes damage and corrosion to home structure and mechanical systems...." The plaintiffs in these Underlying Lawsuits are seeking damages for the costs to repair or replace the drywall, electrical wiring, household items, personal property, and "any materials contaminated or corroded by the drywall as a result of 'off-gassing'," incidental and consequential damages, and diminution of the value of the homes. These complaints contain

counts against ProBuild East, LLC for negligence, strict liability, violations of Florida's Deceptive and Unfair Trade Practices Act, and unjust enrichment.

20. The complaint in the Underlying Lawsuit attached hereto as **Exhibit C** alleges that "Pro-Build Holdings, Inc. f/k/a Rosen Building Supplies" supplied drywall used to build the underlying plaintiffs' homes, which is defective in that it "emits various sulfide gases and/or other volatile organic chemical compounds through 'off-gassing' that causes corrosion of HVAC coils and refrigerator units, . . . and other household items, as well as creates noxious, 'rotten egg-like' odors." This complaint further alleges that the underlying plaintiffs have "suffered and continue to suffer personal injuries as a result of Defendants' defective drywall." This complaint contains counts against Pro-Build Holdings, Inc. for breach of express and implied warranties and strict products liability.

21. The complaint in the Underlying Lawsuit attached hereto as **Exhibit D** alleges that "Rosen Building Supplies Inc. d/b/a Rosen Materials" supplied drywall used to build the underlying plaintiffs' home, which is defective in that it "emits sulfur related toxins, damaging the residence and those residing therein." This complaint further alleges that the "toxins" in the drywall corrode various metals within the homes and pose "serious health risks to those residing therein, including headaches, respiratory ailments, and other maladies." This complaint contains counts against Rosen for strict liability and negligence.

22. ProBuild East LLC was also named in a class action complaint captioned *Payton v. Knauf Gips KG et al.*, Case No. 09-cv-07628, pending in the United States District Court for the Eastern District of Louisiana (the "Omnibus Complaint"). (The Omnibus Complaint is nearly 600 pages long, and thus is not attached to this pleading as an exhibit.) The Omnibus Complaint alleges that ProBuild East LLC supplied "defective drywall" and that the "gypsum and other

5

components of the product break down and release sulfides and other noxious gases that are then emitted (or 'off-gassed') from the drywall." The Omnibus Complaint alleges that "[s]ulfides and other noxious gases, such as those emitted from Defendants' drywall, cause corrosion and damage to personal property (such as air conditioning and refrigerator coils, faucets, utensils, electrical wiring, copper, electronic appliances and other metal surfaces and property)." It further alleges that "[e]xposure to sulfide and other noxious gases, such as those emitted from Defendants' drywall, causes personal injury resulting in eye irritation, sore throat and cough, nausea, fatigue, shortness of breath, fluid in the lungs, and/or neurological harm." The Omnibus Complaint contains counts against ProBuild East LLC for negligence, strict products liability, breach of express and implied warranties, nuisance, unjust enrichment, violations of the Florida Deceptive and Unfair Trade Practices Act and equitable and injunctive relief and medical monitoring.

23. One of the Underlying Lawsuits (attached hereto as **Exhibit E**) was brought by developer Lennar Homes against "Pro-Build Holdings, Inc. f/k/a Rosen Building Supplies." The amended complaint alleges that Rosen supplied drywall to installers who installed the drywall in the homes built by Lennar. The amended complaint alleges that the drywall was defective and "appears to be interacting with other conditions and elements, causing damage to other property within the Affected Homes, including, but not limited to, HVAC coils, certain electrical and plumbing components, and other affected materials and items." The amended complaint contains counts against Pro-Build Holdings, Inc. for breach of implied warranty of merchantability, products liability and equitable subrogation.

24. Defendants have also provided notice of other potential claims arising out of allegedly defective drywall (the "Pre-Suit Claims"). The Pre-Suit Claims (attached hereto as **Exhibit F**) generally allege that drywall supplied by Rosen and/or Defendants "emits" or "off-

6

gases" chemicals, including hydrogen sulfide, which have caused corrosion and other damage to the claimants' homes.

## Drywall Studies

25. Beginning in or about 2009, various Federal and State agencies, as well as private testing firms, analyzed drywall and reported that certain drywall, including drywall manufactured in China, contains and emits sulfur-related chemical compounds that are associated with corrosion of metal, damage to other property and complaints of odors and adverse health effects.

26. In October 2009, the United States Consumer Product Safety Commission ("CPSC") released several reports concerning testing upon Chinese and domestically-produced drywall. Those reports conclude that the Chinese drywall contained higher concentrations of elemental sulfur compared to the domestic drywall. Further, the Chinese drywall emitted higher levels of total volatile sulfur compounds than did the domestic drywall.

27. On or about November 23, 2009, the CPSC released reports regarding additional drywall testing. The CPSC reported that in a fifty-one home study, hydrogen sulfide gas was detected in homes with defective drywall in concentrations that were statistically higher than in homes without such drywall. Further, examination of copper wiring in homes containing defective drywall exhibited corrosion.

## The Granite State Policy

28. Granite State issued Commercial General Liability policy number 02-LX-008998075/000 to Rosen Building Supplies, Inc. dba Rosen Materials and On Site Materials, effective from February 16, 2006 to February 16, 2007 (Exhibit A).

29. Defendants are not entitled to coverage under the Policy with respect to claims arising

from allegedly defective drywall unless Defendants first satisfy all conditions for coverage and coverage is not otherwise excluded.

30. The Total Pollution Exclusion Endorsement attached to the Policy bars coverage for "bodily injury" and "property damage," if any, associated with defective drywall, arising from the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants," as that term is defined in the Policy.

31. Coverage is barred to the extent that Defendants fail to qualify as insureds and/or fail to succeed to the rights of Rosen under the Policy.

32. Coverage is barred to the extent that a claimant seeks relief from an insured that does not constitute "damages," as that term is used in the Policy. Equitable relief, including medical monitoring, or economic losses associated with defective drywall does not constitute covered damages within the Policy.

33. Coverage is barred for damages that do not constitute "bodily injury" or "property damage," as those terms are defined in the Policy. The mere presence of defective drywall is not "property damage" and there is no coverage under the Policy for any costs arising out of the process of repairing or replacing the drywall.

34. Coverage is barred to the extent any "bodily injury" or "property damage" associated with defective drywall is not the result of an "occurrence," as that term is defined in the Policy.

35. Coverage is barred to the extent that "bodily injury" or "property damage," if any, associated with defective drywall did not occur during the policy period in issue.

36. "Bodily injury" or "property damage," if any, associated with defective drywall that is continuing or progressive over any length of time is one "occurrence" that occurs only when the "bodily injury," "property damage," or both first commenced.

37. Coverage is barred to the extent that continuing or progressive "bodily injury" or "property damage" associated with defective drywall, if any, first commenced prior to the inception date of the Policy.

38. Coverage is barred for "bodily injury" or "property damage," if any, for which the insured is obligated to pay damages associated with defective drywall by reason of the assumption of liability in a contract or agreement.

39. Coverage is barred for "property damage," if any, associated with defective drywall to property an insured owns, rents, or occupies.

40. Coverage is barred for "property damage," if any, to an insured's product, associated with defective drywall.

41. Coverage is barred for "property damage," if any, to an insured's work associated with defective drywall that is included in the "products completed operations hazard," as defined in the Policy.

42. Coverage is barred for "property damage," if any, to "impaired property," as defined by the Policy, and to property that has not been physically injured, associated with defective drywall, arising out of a defect in an insured's product or work, or a delay or failure by an insured or anyone acting on an insured's behalf to perform a contract or agreement in accordance with its terms.

### Granite State's Communications with ProBuild

43. Granite State has issued position letters to the ProBuild Defendants advising that Granite State was reserving its rights to decline coverage for all of the Underlying Lawsuits.

44. Granite State has issued position letters or requested additional information and advised that Granite State was reserving its rights to decline coverage for all of the Pre-Suit

Claims.

45. Each letter refers to the policy terms on which Granite State relied or may rely to decline coverage, including the terms noted above. Granite State has also informed Defendants that, to the extent it agreed to accept a defense in the Underlying Lawsuits or to pay for the costs to investigate the Pre-Suit Claims, it is participating in the payment of defense or investigation costs subject to the right to reimbursement of any costs if it is determined that Granite State has no coverage obligations under the Policy.

46. Granite State has agreed to participate in the defense of the Defendants in the Underlying Lawsuits and to pay for the costs to investigate the Pre-Suit Claims pursuant to a reservation of rights under the Policy despite the fact that there is no potential for coverage under the Policy.

## COUNT I
## FOR A DECLARATION THAT GRANITE STATE
## HAS NO DUTY TO DEFEND OR INDEMNIFY DEFENDANTS

47. Granite State incorporates the allegations set forth within Paragraphs 1 through 46 as if fully set forth herein.

48. A controversy exists between Granite State and Defendants regarding the obligations of Granite State to defend and indemnify Defendants under the Policy with respect to claims arising from allegedly defective drywall supplied by Rosen and/or Defendants.

49. The interpretation of the applicable terms of the Policy at issue is governed by Florida law.

50. Coverage is limited or eliminated by the terms of the Policy for the alleged damages for which Defendants have or will seek coverage under the Policy.

51. Accordingly, Granite State has no duty to defend or indemnify Defendants in the

Underlying Lawsuits or Pre-Suit Claims under the Policy.

52. Granite State is entitled to reimbursement from Defendants for defense or investigation costs it has incurred to the extent that Granite State has no coverage obligations to Defendants under the Policy.

**WHEREFORE**, Granite State requests the following declaratory relief:

1. A judgment in favor of Granite State declaring that Granite State has no duty under the Policy to defend or indemnify Defendants with respect to any claims or damages arising from allegedly defective drywall supplied by Rosen and/or Defendants;

2. A judgment in favor of Granite State declaring that Granite State is entitled to reimbursement of defense costs Granite State incurs on behalf of Defendants to the extent Granite State has no coverage obligations under the Policy; and

3. Such other relief as the Court may deem just and proper.

DATED this 19th day of February, 2010.

Respectfully submitted,

Cindy L. Ebenfeld
Florida Bar No. 0980579
HICKS, PORTER, EBENFELD & STEIN, P.A.
11011 Sheridan Street, Suite 104
Cooper City, Florida  33026
Tel:  (954) 624-8700
Fax:  (954) 624-8064
cebenfeld@mhickslaw.com
**Ellen Novoseletsky**
Florida Bar No. 0147613
HICKS, PORTER, EBENFELD & STEIN, P.A.
799 Brickell Plaza, Suite 900
Miami, FL 33131
Tel:  (305) 374-8171
Fax:  (305) 372-8038
enovoseletsky@mhickslaw.com

11

        *Co-Counsel*

        Joseph A. Hinkhouse, Esq.
        Sara U. Gattie, Esq.
        Brian H. Sanchez, Esq.
        HINKHOUSE WILLIAMS WALSH LLP
        180 N. Stetson Avenue, Suite 3400
        Chicago, Illinois  60601
        Tel:  (312) 784-5400
        Fax:  (312) 784-5499
        jhinkhouse@hww-law.com
        suffelman@hww-law.com
        bsanchez@hww-law.com
        *Counsel for Plaintiffs*

4833-1683-5077, v.  1
g:\chartis\granite state\pldgs\complaint.doc